IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | | |
|---|---|---|
| MELISSA A. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:08-00321 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Supplemental Security Income (SSI), under Title XVI of the

Social Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently pending before the Court on

the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 13 and 17.) Both parties

have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 4

and 5.)

The Plaintiff, Melissa A. Williams (hereinafter referred to as "Claimant"), filed an

application for SSI on December 17, 2003 (protective filing date), alleging disability as of June 27,

2002, due to degenerative disc disease, disc bulging, spinal disease, osteoporosis, arthritis, obesity

with swelling of legs and hands, asthma, insomnia, anxiety, a nervous disorder, and migraines.[1] (Tr.

at 14, 125, 131, 155-58, 166.) The claim was denied initially and upon reconsideration. (Tr. at 117-

---

[1] Claimant filed a prior application for SSI on August 31, 1991, alleging an onset date of
January 1, 1991, due to spinal disease, arthritis, asthma, insomnia, anxiety, and migraines. (Tr. at
14.) Her application was denied on June 26, 2002, by ALJ Thomas W. Kennedy. (*Id.*) ALJ
Kennedy's decision was affirmed by the Appeals Council, and subsequently by this District Court
on September 27, 2004. (*Id.*) *See Williams v. Barnhart*, Civil Action No. 1:03-00337 (S.D. W.Va.
Sept. 27, 2004) (Doc. Nos. 28 and 29.)

18, 125-27, 131-33.) On November 12, 2004, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 121.) The hearing was held on December 7, 2005, before the Honorable Steven A. DeMonbreum. (Tr. at 61-116.) By decision dated May 24, 2006, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-26.) The ALJ's decision became the final decision of the Commissioner on April 15, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 6-9.) On May 19, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall

2

v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of

Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

4

to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since her alleged onset date on June 27, 2002. (Tr. at 16 and 25, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from degenerative disc disease, asthma, hypertension, diabetes mellitus, obesity, episodic headaches, depression, and an anxiety disorder, which were severe impairments. (Tr. at 16 and 25, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17 and 25, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity to perform sedentary exertional work, as follows:

> The claimant retains the residual functional capacity to perform unskilled sedentary exertional activity, subject to physical, environmental, and mental limitations. Specifically, the claimant should not lift or carry more than ten pounds at a time; should not walk or stand more th[an] four hours total in an eight-hour day; but can sit for about six hours total in an eight-hour day. Posturally, she can occasionally climb ramps and stairs, kneel, or stoop; but should never climb ropes, scaffolds, or

ladders, balance, crouch, or crawl. The environmental limitations include the need to avoid concentrated exposure to temperature extremes, respiratory irritants such as fumes, dusts, gases, etc., and vibration; she should also avoid exposure to hazards such as dangerous moving machinery and unprotected heights (due to possible side effects of medications and headaches). The mental limitations include understand, remember, and carry out only short and simple instructions and have minimal contact with the public. The claimant is able to do sustained work activities in an ordinary work setting on a regular and continuing basis.

(Tr. at 22 and 25, Finding No. 5.) At step four, the ALJ found that Claimant had no past relevant work. (Tr. at 23 and 25, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a an office clerk, a hand packer, cashier, and surveillance monitor, at the sedentary exertional level. (Tr. at 24 and 26, Finding No. 11.) On this basis, benefits were denied. (Tr. at 25-26, Finding No. 12.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on February 11, 1965, and was 40 years old at the time of the administrative hearing, December 7, 2005. (Tr. at 16, 24-25, 69, 155.) Claimant had a seventh grade, or limited education. (Tr. at 16, 24, 26, 69, 172.) In the past, Claimant worked as a fast food worker. (Tr. at 16, 23, 70, 89, 167.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred at steps two and five of the sequential analysis. (Document No. 14 at 3.) Specifically, Claimant alleges that the ALJ failed to follow the two-part pain and credibility analysis set forth in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996). (Id. at 3-4.) She also alleges that the ALJ erred in assessing her residual functional capacity ("RFC") when he failed to acknowledge three and one-half years of treatment at The Know Pain Clinic and when he failed to accord greater weight to the opinion of Claimant's consultative examiner, Dr. Kropac. (Id. at 4-7.) Finally, Claimant alleges that the ALJ erred in questioning the vocational expert when he "badgered" her into changing her answer regarding a moderate limitation as assessed by a state agency physician, and then relied on her testimony. (Id. at 7-14.)

The Commissioner asserts that the ALJ properly followed SSR 96-3p when he considered Claimant's pain and other symptoms in determining whether Claimant's medically determinable

7

impairments were severe at step two of the sequential analysis. (Document No. 17 at 6-7.) The Commissioner asserts that Claimant's pain was a result or a symptom of the impairments that the ALJ determined were severe impairments and notes that Claimant did not allege pain as a separate disabling impairment. (Id. at 7.) Consequently, the Commissioner contends that the ALJ did not commit error at step two by failing to identify pain as a severe impairment. (Id.) Regarding the ALJ's RFC assessment, the Commissioner asserts that the ALJ properly considered all the evidence of record and that substantial evidence supports his assessment. (Id. at 7-9.) The Commissioner notes that the treatment records from The Know Pain Clinic demonstrated that Claimant continued to improve her functional ability and quality of life with prescribed medications and did not suggest that she required additional limitations in her RFC assessment. (Id. at 8.) The Commissioner asserts that the ALJ also considered Dr. Kropac's opinion and accorded it little weight because his minimal physical findings revealed full range of upper extremity motion and normal manual motor strength testing. (Id. at 8-9.) The Commissioner notes that the treatment notes from The Know Pain Clinic did not support Dr. Kropac's extremely restrictive limitations. (Id. at 9.)

Finally, the Commissioner asserts that the ALJ properly relied upon the VE's response to the hypothetical questions that included Claimant's adopted RFC. (Id.) The Commissioner contends that because the ALJ's RFC assessment was supported by substantial evidence, then the VE's response to the ALJ's hypothetical question that included the adopted RFC assessment constitutes substantial evidence. (Id.) The Commissioner notes that the ALJ's hypothetical questions need not have listed every impairment alleged by Claimant. (Id.) Accordingly, the Commissioner asserts that the ALJ's decision is supported by substantial evidence and that Claimant's arguments are without merit. (Id. at 10.)

Analysis.

1. Pain as a Severe Impairment.

Claimant first alleges that the ALJ erred at step two of the sequential analysis when he failed to recognize Claimant's pain as a severe impairment. (Document No. 14 at 3.) Claimant notes the two step analysis required by Craig v. Chater, 76 F.3d 585 (4th Cir. 1996), and asserts that the ALJ did not follow the second step. (Id. at 4.) Claimant asserts:

> After he conceded that the [Claimant] did have an impairment which could reasonably be expected to produce some pain and discomfort, he then flatly stated that "the question" was whether the pain and discomfort suffered was of such intensity as to preclude substantial gainful employment. That is not part of the test, and it is certainly an unwarranted burden because it would require a claimant to establish that the pain, in and of itself, was disabling.
> Plaintiff has never contended that her pain is disabling, but it is certainly a severe impairment in that it significantly limits her physical ability to do basic work activities.

(Id.) The Commissioner asserts that Claimant's reliance on Craig v. Chater is misplaced because that case explains the two-step process required in assessing a claimant's subjective complaints as opposed to determining the severity of a claimant's impairments. (Document No. 17 at 6.) Rather, pursuant to SSR 96-3p, the ALJ must consider "how the symptoms, in this case - pain, impact on a claimant's ability to perform basic work activities." (Id. at 6-7.) The Commissioner asserts that the ALJ properly follow SSR 96-3p in considering Claimant's pain and other symptoms in determining whether Claimant's medically determinable impairments were severe and concluded that Claimant's pain was a result or a symptom of the impairments that he found to be severe. (Id. at 7.) The Commissioner notes that Claimant did not allege pain as a separate disabling impairment. (Id.)

To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2006). Basic work activities are the abilities and

aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id.; §§ 404.1521(b)(1)-(6); 416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

In determining the severity of an impairment at step two of the sequential evaluation process, SSR 96-3p requires that symptoms such as pain first to be established by objective medical evidence (i.e., signs and laboratory findings) that a claimant has a medically determinable impairment that reasonably could be expected to produce the alleged symptoms. Once this relationship between the medically determinable impairment and the alleged symptoms is established, "the intensity, persistence, and limiting effects of the symptom(s) must be considered along with the objective medical and other evidence in determining whether the impairment or combination of impairments is severe." Id. If "such symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to do basic work activities, then adjudicator must find that the impairment(s) is severe." Id.

Claimant concedes that she did not allege pain as a separate and distinct disabling

10

impairment, but asserts that it "significantly limits her physical ability to do basic work activities." (Document No. 14 at 4.) Citing <u>Craig v. Chater</u>, Claimant asserts that the ALJ first found that the medical evidence demonstrated that she had an impairment that reasonably could be expected to produce some degree of pain and discomfort. (<u>Id.</u>; Tr. at 21.) She notes however, that the ALJ then stated as follows:

> The question however, is not whether pain and discomfort is experienced but rather whether the pain and discomfort is of such an intensity that it precludes "substantial gainful activity" irrespective of the exertional demands of a particular job or occupation.

(Document No. 14 at 4; Tr. at 21.) Claimant asserts that the ALJ's improper transposition of the second step of the <u>Craig</u> analysis requires Claimant to establish that pain, in and of itself, was disabling. (Document No. 14 at 4.) As noted above, the Commissioner asserts that Claimant improperly has relied on <u>Craig v. Chater</u> and essentially has confused the standards required for determining whether an impairment is severe at step two of the sequential analysis and the two-step analysis set forth in <u>Craig</u>, for assessing a claimant's credibility. (Document No. 17 at 6-7.)

The Court finds that both Claimant and the Commissioner are correct. While the focus of the two-step analysis set forth in <u>Craig v. Chater</u> was on assessing a claimant's credibility, the import of the analysis has relevance to the second step of the sequential analysis in determining whether pain is a severe impairment. Pursuant to <u>Craig</u> and SSR 96-3p, the ALJ first must determine whether Claimant has a medically determinable impairment that reasonably could produce the alleged pain. In the instant case, Claimant did not allege pain as a separate disabling impairment. Thus, with the exception of noting that Claimant's profile on the Minnesota Multiphasic Personality Inventory indicated the tendency to exaggerate the severity of her symptoms, including pain, the ALJ specifically did not address pain in his step two findings. Thus, the Court is constrained to review

his pain analysis when he assessed Claimant's credibility. In this regard, the ALJ properly found that "the medical evidence is sufficient to establish that the claimant possesses an impairment that can reasonably be expected to produce some degree of pain and discomfort." (Tr. at 21.) The ALJ then proceeded to consider the intensity, duration, and limiting effects of Claimant's alleged pain. (Tr. at 21-22.)

Though the ALJ rephrased the second step of the credibility assessment set forth in <u>Craig</u>,[3]

---

[3] A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2006); SSR 96-7p; *See also, Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. <u>Id.</u> at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. *Hyatt v. Sullivan*, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2006). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

 

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2006).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

*Craig* and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, *Craig* does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain *solely* because the pain itself is not supported by objective medical evidence.

his analysis reveals that its import was the same. The ALJ found that the "lack of objective evidence and clinical findings in the record are out of proportion to the claimant's subjective complaints and do not support a conclusion that the limitations are of an intensity, frequency, or duration as to preclude the performance of all work activity (SSR 96-7p)." (Tr. at 21.) The ALJ went on to consider  the factors set forth in 20 C.F.R. § 416.929(c)(3) (2006), including Claimant's daily activities; location, duration, frequency, and intensity of her pain; precipitating and aggravating factors; treatment; and the medical opinions of record. Claimant does not challenge the ALJ's credibility analysis and the Court finds that it is supported by substantial evidence. Based on these factors, and the indication that Claimant exaggerates her pain and other symptoms, the ALJ essentially determined that Claimant's pain was not a severe impairment.

Accordingly, the undersigned finds that though the ALJ may have misstated the second step of the credibility analysis established in Craig, he nevertheless properly assessed Claimant's credibility and the severity of Claimant's impairments, including pain, as required at the second step of the sequential evaluation.

 2. RFC Assessment.

Claimant next alleges that the ALJ erred in assessing her RFC when he failed to acknowledge the three and one-half years of treatment notes from The Know Pain Clinic and when he failed to accord greater weight to the opinion of the consultative examiner, Dr. Kropac. (Document No. 14 at 4-7.) The Commissioner asserts that the treatment notes from The Know Pain Clinic essentially support the ALJ's RFC assessment, and therefore, do not suggest that Claimant required any additional limitations in her RFC assessment. (Document No. 17 at 8.) The

Commissioner further asserts that the ALJ properly accorded little weight to the opinion of Dr. Kropac and notes that the treatment notes from The Know Pain Clinic did not support Dr. Kropac's extremely restrictive limitations. (Id. at 8-9.)

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2006). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual

15

> functional capacity . . . or the application of vocational factors, the final
> responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2006).

> In determining what a claimant can do despite his limitations, the SSA must consider
> the entire record, including all relevant medical and nonmedical evidence, such as
> a claimant's own statement of what he or she is able or unable to do.  That is, the
> SSA need not accept only physicians' opinions.  In fact, if conflicting medical
> evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in

the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2));

rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and

416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special

significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§

404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the

Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your

residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20

C.F.R. §§ 404.1545 and 416.946 (2006). However, the adjudicator must still apply the applicable

factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues

reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473

(1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the

adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical

source statement,' which is a 'statement about what you can still do despite your impairment(s)'

made by an individual's medical source and based on that source's own medical findings." Id. SSR

16

96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2006). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more

17

consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2006). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the

factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

      The medical evidence of record reflects Claimant's treatment at The Know Pain Clinic from October 16, 2002, through November 8, 2005. (Tr. at 282-95, 396-434, 461-88, 526-32.) As of October 11, 2005, it was noted that Claimant was able to do light work and basic activities of daily living with her medications. (Tr. at 527.) The treatment notes indicate that daily activities included, but were not limited to, washing dishes and cleaning her house. (Tr. at 461.) The notes further reflect that Claimant's conditions were stable with medication, that she was functional, that she was encouraged throughout her treatment to continue exercising, and that she consistently reported average levels of pain of three or four out of ten when on medication. (Tr. at 464, 468, 526-27, 530, 532.)

      On February 15, 2006, Claimant was examined by Dr. Robert P. Kropac, M.D., at the referral of her attorney, for a physical evaluation. (Tr. at 533-43.) Claimant complained of neck and back pain, as well as pain in her upper and lower extremities. (Tr. at 534.) On physical examination, Dr. Kropac noted tenderness in the trapezial muscle masses with limited range of cervical motion associated with increased neck pain. (Tr. at 536.) He noted that sensation was grossly intact throughout both upper extremities. (Id.) Examination of the upper extremities otherwise revealed full range of motion and normal strength. (Id.) Dr. Kropac noted limitation of thoracic motion with increased lower back pain and tenderness over the lower lumbosacral spine from L2-S1 and over the related paraspinal muscle masses. (Tr. at 537.) The range of lumbosacral motion also was limited and straight leg-raising testing precipitated lower back pain at ninety degrees bilaterally in the sitting posture. (Id.) Claimant had full range of lower extremity motion with complaints of lower back pain, normal motor strength testing, was able to heel and toe walk without evidence of weakness, and walked with a non-antalgic gait. (Id.) She was not able to squat fully secondary to low back pain.

(Id.) There was no evidence of atrophy. (Id.) Dr. Kropac diagnosed cervical disc herniation with upper extremity radiculitis, thoracolumbar disc herniation with lower extremity radiculitis, and lumbar disc herniation with lower extremity radiculitis. (Tr. at 539.) Based on the physical findings, MRI findings, and Claimant's history, in addition to her education and work experience, Dr. Kropac opined that Claimant was not capable of gainful employment and should be considered permanently totally disabled. (Id.)

As previously noted, the ALJ determined that Claimant retained the RFC to perform sedentary exertional activity subject to certain limitations. (Tr. at 22.) Specifically, he limited Claimant to walking and standing no more than four hours in an eight-hour day and sitting for six hours in an eight-hour day. (Id.) He found that she could occasionally climb ramps and stairs, kneel and stoop, but could never climb ropes, scaffolds, or ladders, balance, crouch, or crawl. (Id.) He also assessed mental and environmental and mental limitations, which were not addressed by Dr. Kropac or the treatment records from The Know Pain Clinic. (Id.) Regarding Dr. Kropac's opinion, the ALJ noted that his examination revealed full range of motion of all upper and lower extremities, normal gait, an ability to heel and toe walk, normal strength, and no evidence of atrophy. (Tr. at 21.) He noted however, that Claimant's range of spinal motion was somewhat restricted due to subjective pain complaints, and that she had some spinal tenderness. (Tr. at 21-22.) Based on these minimal physical findings, the ALJ concluded that Dr. Kropac relied heavily upon Claimant's subjective complaints rather than physical findings in opining that Claimant was incapable of working. (Tr. at 22-23.) The ALJ noted that Dr. Kropac examined Claimant on one occasion and referenced in his report a 2002 Functional Capacity Evaluation that determined Claimant was able to work at the sedentary exertional level, which was consistent with the ALJ's RFC assessment. (Tr. at 23.) Thus, the ALJ accorded Dr. Kropac's opinion little weight. (Id.) The undersigned finds that the ALJ's

analysis of Dr. Kropac's opinion is supported by substantial evidence. As the ALJ found, Dr. Kropac's opinion is inconsistent with his minimal physical findings, is based on a one-time examination of Claimant, and appears to be based primarily on Claimant's subjective complaints rather than on the physical findings. Moreover, the opinion is inconsistent with the treatment records from The Know Pain Clinic where Claimant treated for a number of years. These records demonstrate that Claimant's conditions improved and were controlled with medication to the point that she was able to perform light activity. Claimant correctly points out that the ALJ did not mention the treatment notes from The Know Pain Clinic in his decision. Nevertheless, because the notes are indicative of an ability to perform light exertional work, an improvement in Claimant's condition, and an absence of significant limitations, there is no indication that these records would have altered the ALJ's RFC assessment, and in fact, would have accommodated a greater exertional level than that assessed by the ALJ. Thus, as the Commissioner points out, the treatment notes from The Know Pain Clinic do not suggest any additional limitations not accommodated by the ALJ in his RFC assessment, and therefore, the undersigned finds that any error the ALJ may have committed in not acknowledging the notes specifically in his decision, is harmless.

3. Vocational Expert Testimony.

Finally, Claimant alleges that the ALJ erred in questioning the VE and relying on her testimony when he badgered her and caused her to change her answers to his hypothetical questions. (Document No. 14 at 7-14.) Specifically, Claimant asserts that in response to the ALJ's second hypothetical question, which asked the VE to consider the non-exertional limitations contained in a mental RFC assessment of Dr. H. Hoback Clark, M.D., a state agency consultant, dated October 1, 2004, the VE responded that the limitations would greatly impact employability. (Id. at 7.) The ALJ however, argued with the VE and opined that a moderate limitation would be satisfactory and

21

not result in the employee's firing. (Id. at 7-8.) Claimant asserts that the VE subsequently "stepped out of her vocational expert role, changed the RFC in the hypothetical question and evinced her personal opinion that the [Claimant's] limitation 'is more slight than moderate.'" (Id. at 8.) Claimant asserts that the ALJ, VE, and Claimant's counsel then proceeded to discuss absences, and at one point, the ALJ answered for the VE. (Id. at 8-11.) Claimant asserts that the VE "clearly became intimidated during this hearing, because she was answering the questions directly at the outset, but when the ALJ interrupted, disagreed with her, and even ridiculed her, she started talking about 'company policy' and the fact that she really could not give an opinion because it would depend upon the individual company." (Id. at 11.) Claimant asserts that regarding absenteeism, the VE ultimately, after being badgered by the ALJ, "came down with the repeated refrain that the issue was between the employee and employer and/or company policy." (Id. at 12.) Claimant therefore, alleges that the ALJ's decision is not supported by substantial evidence because he relied on the VE's testimony after he badgered her and essentially forced her to change her testimony. (Id. at 12-14.) Citing Western v. Harris, 633 F.2d 1204, 1207 (5th Cir. 1981), Claimant contends that the misuse of a VE's testimony warrants remand. (Id. at 12.)

The Commissioner asserts that because the ALJ's RFC assessment is supported by substantial evidence, then the ALJ properly relied upon the VE's response to the hypothetical question that included Claimant's adopted RFC assessment. (Document No. 17 at 9.) The Commissioner notes that the ALJ was not required to present a hypothetical question to the VE that listed every impairment alleged by Claimant. (Id.)

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult

22

to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

SSR 00-4p, which became effective December 4, 2000, and was in effect at the time of the administrative hearing in 2007, states that before an ALJ can rely on Vocational Expert testimony, he or she must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by the vocational expert and information contained in the DOT and explain in the determination or decision how any conflict that has been identified was resolved. Social Security Ruling 00-4p, 2000 WL 1898704 (December 4, 2000).

The ALJ's second hypothetical question to the VE asked her to assume the moderate non-exertional limitations contained in Exhibit 17F. (Tr. at 95-96.) The VE responded that she was concerned that the moderate limitations would limit the hypothetical individual's "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." (Tr. at 96.) The VE never stated however, that the limitations would preclude the previously identified jobs of an office clerk, a courier, surveillance monitor, or bench assembler. The ALJ noted that the limitations were only moderate, and therefore, not that restrictive. (Tr. at 97.) Regarding absenteeism, the ALJ noted his confusion with the VE's answers and asked where she was "coming down on this." (Id.) In response, the VE stated that she thought Claimant was "more

23

slight than moderate. I mean slight and moderate. Slight and moderate." (Tr. at 98.) Claimant's attorney subsequently returned the VE's focus to the issue of absenteeism and the VE ultimately testified that during a probationary period, an employee did not have any accrued days from which he or she could miss the usual one and one half to two days of work per month. (Tr. at 101.) Nevertheless, the VE testified that company policy should allow for legitimate absences, such as being sick, but that it was up to the individual company. (Tr. at 105, 107, 111-12.)

Claimant asserts that the ALJ badgered the VE and essentially forced her to change her testimony. From the transcript of the administrative hearing however, the undersigned finds that it appears that the VE simply did not know the answer to counsel's questions regarding absenteeism, and therefore, deferred to company policy. The VE stated on several occasions that she was going to go to Wendy's and Hardee's to inquire as to their specific policies during a probationary period. Thus, it is clear that the VE either was unaware of the answer, or that the answer was dependent upon the specific employer. Though the ALJ improperly answered a question or two for the VE, the undersigned finds that the ALJ did not "badger" the VE to the extent that she succumbed to his discretion and answered questions to his pleasing. In Western v. Harris, 633 F.2d 1204, 1207 (5th Cir. 1981), the case cited by Claimant, the Fifth Circuit Court of Appeals found improper an ALJ's reliance on vocational expert testimony that the claimant could perform sedentary work when the ALJ instructed the VE to assume the claimant could perform sedentary work. In the instant case, the ALJ did not instruct the VE as to how to answer. Rather, the VE responded to the ALJ's hypothetical questions and then the VE, ALJ, and counsel discussed the VE's responses at length. Accordingly, the undersigned finds that the ALJ properly relied on the VE's testimony and that substantial evidence supports the ALJ's RFC assessment and his decision that Claimant was not under a disability.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 13.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 17.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2009.

R. Clarke VanDervort
United States Magistrate Judge